In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-2143

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ALAN R. KING, JR.,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 07 CR 16—**David F. Hamilton**, *Judge.*

———————

SUBMITTED OCTOBER 17, 2007—DECIDED OCTOBER 18, 2007
AMENDED NOVEMBER 13, 2007[1]

———————

Before EASTERBROOK, *Chief Judge*, and BAUER and
KANNE, *Circuit Judges*.

PER CURIAM.   Alan King used stolen social security
numbers to poach Hurricane Katrina relief funds, student-
loan money, Pell Grant money, and credit at various
banks and retailers. King pleaded guilty to stealing
government property, 18 U.S.C. § 641, loan fraud, *id.*
§ 1014, false representation of social security numbers,

———————

[1] An order was issued in this matter on October 18, 2007. The
panel has determined that the decision should be amended and
published as a Per Curiam opinion.

42 U.S.C. § 408(a)(7)(B), and federal student financial aid fraud, 20 U.S.C. § 1097(a). The district court sentenced King to a total of 105 months' imprisonment, along with five years' supervised release, $183,845 in restitution, and a $400 special assessment. King filed a notice of appeal; perhaps anticipating our opinion in *United States v. Gammicchia*, 498 F.3d 467 (7th Cir. 2007) (when a criminal appeal is frivolous, the defendant's attorneys should file an *Anders* motion), his appointed counsel moved to withdraw because he cannot discern a nonfrivolous basis for appeal. *See Anders v. California*, 386 U.S. 738 (1967). King has responded to counsel's facially adequate brief, *see* Cir. R. 51(b), so we limit our review to the potential issues identified by counsel and King. *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

We begin with King's belated contention that he was not of "sound mind" when he pleaded guilty because he had ingested twice his morning dose of Elavil, a drug used to treat depression and anxiety. But other than saying that the anti-depressant elevated his mood, King has not explained how it possibly could have impaired his rational faculties. *See, e.g.*, *United States v. Grimes*, 173 F.3d 634, 636-37 (7th Cir. 1999); *United States v. Groll*, 992 F.2d 755, 758 n.2 (7th Cir. 1993). Moreover, King has given us no reason to doubt the veracity of his sworn statements that, notwithstanding his ingestion of the drug, he understood the charges against him, the rights that he was relinquishing by pleading guilty, and the consequences of his plea. *See Nunez v. United States*, 495 F.3d 544, 546 (7th Cir. 2007); *United States v. Fuller,* 15 F.3d 646, 650 & n.3 (7th Cir. 1994). Indeed, only a few minutes after he entered his plea, King delivered an articulate sentencing allocution in which he described his upbringing and his reasons for absconding while on pretrial release—he even discussed a New York Times

article about alternatives to prison. Given his coherent responses, along with his attorney's unequivocal confirmation that he was competent to plead guilty, it would be frivolous for King to attempt to vacate his plea on this ground. *See, e.g.*, *Fuller,* 15 F.3d at 650 & n.4; *United States v. Chichakly*, 926 F.2d 624, 633-34 (7th Cir. 1991).

Both counsel and King raise a potential challenge to the district court's rejection of the plea agreement King reached with the government. *See* Fed. R. Crim. P. 11(c)(3)(A). Counsel notes that the district court had to articulate a sound reason for rejecting the agreement, *United States v. Kraus*, 137 F.3d 447, 453 (7th Cir. 1998), and that our review would be only for an abuse of discretion, *United States v. Martin*, 287 F.3d 609, 621 (7th Cir. 2002). The district court rejected the agreement because it obligated the court to calculate King's offense level as 19 and sentence him at the low end of the guidelines' range. The district judge explained that he disagreed with the parties' stipulated offense level—which differed from the probation officer's recommendation—because it improperly rewarded King for accepting responsibility, *see* U.S.S.G. § 3E1.1, and did not include a two-level upward adjustment for unauthorized use of another person's identifying information, *see id.* § 2B1.1(b)(10)(C)(I).[2] The district judge also doubted whether King's criminal history category, which he anticipated would be either II or III, would account adequately for King's lifelong pursuit of fraud. The court concluded that a sentence within the parties' proposed range would be

---

[2] Although King contends that the government advocated for that adjustment in breach of the plea agreement, the record makes clear that the government upheld its end of the bargain. In any event, King later conceded that the adjustment applied.

too low to achieve the sentencing goals enumerated in 18 U.S.C. § 3553(a), particularly the need to provide adequate deterrence and to protect the public from King's future crimes, *see id.* § 3553(a)(2)(B), (C). Those are sound reasons to reject the plea agreement, *see, e.g.*, *Martin*, 287 F.3d at 624, and thus we agree with counsel that it would be frivolous to argue that the district court abused its discretion.

Counsel and King next consider whether King could challenge the court's finding that he obstructed justice by attempting to flee while on pretrial release. *See* U.S.S.G. § 3C1.1. Counsel notes that we would overturn the finding only if it is clearly erroneous. *See United States v. Davis*, 442 F.3d 1003, 1008 (7th Cir. 2006). King says he could challenge the adjustment on the grounds that he was not strictly "in custody" when he neglected to return to a community-correction center, nor did he fail to appear at a court hearing. *Cf. United States v. Scott*, 405 F.3d 615, 617-18 (7th Cir. 2005). But the district court explained that King deserved the adjustment because he absconded for two months, obtained a driver's license by using a stolen social security number, used that false identity to purchase a car, and packed that car with all of his personal belongings—behavior the judge sensibly read as an attempt to elude justice. *See* U.S.S.G. § 3C1.1 cmt. n.4(e); *United States v. Porter*, 145 F.3d 897, 903-04 (7th Cir. 1998). Thus, we agree with counsel that it would be frivolous to challenge the district court's obstruction finding.

Counsel and King also consider whether he could challenge the district court's refusal to award him a reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. Counsel notes that we would review that decision only for clear error, and that we would presume, based on King's obstruction of justice, that he had not

accepted responsibility. *See Davis*, 442 F.3d at 1009. King maintains that his confession upon arrest, his voluntary assistance to authorities in explaining the methods of his crimes, his waiver of indictments, his prompt decision to enter guilty pleas, and his expressions of remorse are "exceptional circumstances," *id.* at 1009-10, warranting credit for acceptance of responsibility. But we agree with counsel that these arguments would be frivolous. King's level of cooperation was not unusual, and his behavior while on pretrial release—recommitting the crime of falsely representing social security numbers so that he could obtain a fake ID and a car, in an obvious attempt to elude authorities—was wholly inconsistent with his having accepted responsibility for his actions. *See* U.S.S.G. § 3E1.1, cmt. n.3.

We next consider counsel and King's potential challenge to the district court's criminal history calculation. The court determined that King was in category III based in part on King's prior conviction for two counts of falsely informing, *see* Ind. Code Ann. § 35-44-2-2 (2007). Although normally that offense should not count toward a defendant's criminal history category, *see* U.S.S.G. § 4A1.2(c)(1), the district court assessed one point for the offense because it is similar to King's offenses of conviction, *see id.* § 4A1.2(c)(1)(B); *United States v. Hagenow*, 423 F.3d 638, 645 (7th Cir. 2005). Counsel notes that we would review the district court's criminal history categorization de novo, *see United States v. Lock*, 466 F.3d 594, 597 (7th Cir. 2006), and we would use a "common sense" approach to determine whether the falsely-informing offense was similar to any of his offenses of conviction. *See id.* at 598. We would consider various factors—among them the elements of falsely informing, its seriousness, King's level of culpability, the punishment he received, and whether it shows recurring criminal conduct—along with the guidelines' language and the purposes of criminal

history categorization. *Id.* at 599. Here, King's conviction was the result of his false statements to a police officer—and later to a state-court judge—denying that his license had been suspended and asserting that he was being confused with his twin brother (who he said was also named Alan King). But King has no "evil twin"; he was attempting to escape his bad driving record by using a new social security number (obtained through fraud) and assuming a new identity as the well-behaved twin brother of his former self. Because the offense involved bald-faced lies about his identity, and because it shows King's recurring pattern of extremely deceptive conduct, it easily qualifies as similar to the fraud he perpetrated in this case. Thus, we agree that it would be frivolous to challenge the district court's inclusion of this offense to categorize King's criminal history.

Finally, counsel and King consider whether he could challenge the reasonableness of his 105-month prison sentence, which was 34 months above the top of the guidelines' range.[3] Counsel notes that we would review the sentence for reasonableness, and that we require only an adequate statement of the judge's reasons, grounded in 18 U.S.C. § 3553(a), for choosing it. *See United States v. Ngatia*, 477 F.3d 496, 501 (7th Cir. 2007). In this case the court's explanation was nothing short of compelling. The court noted that King "took advantage of the most generous instincts in American

---

[3] King maintains that the district judge had to warn him, under Federal Rule of Criminal Procedure 32(h), that he was planning to sentence him outside of the guidelines' range. But after *United States v. Booker*, 543 U.S. 220 (2005), all defendants should be aware—and King certainly was—that the sentencing court may exercise its discretion to sentence above the guideline range if it is warranted by the statutory sentencing factors. *See Walker*, 447 F.3d at 1007.

society" by pocketing funds set aside for victims of Hurricane Katrina, and that his indirect victimization of taxpayers required "swift, severe and visible" punishment to deter others. *See* 18 U.S.C. § 3553(a)(1), (2)(A)-(B). The court further explained that the guidelines did not adequately account for King's lifetime pursuit of fraudulent schemes, including his convictions, as a teenager, for bank fraud and forgery. *See id.* § 3553(a)(1), (a)(4). The district judge acknowledged King's problems with depression and anxiety, but credited a psychological evaluator's conclusion that King was otherwise malingering about his mental-health problems. *See id.* § 3553(a)(1). The court concluded that a heavy sentence was necessary (1) to account for the seriousness of King's offenses, to promote respect for the law, and to provide just punishment, *see id.* § 3553(a)(2)(A); (2) to deter future crimes, *see id.* § 3553(a)(2)(B); and (3) to protect the public from King's "addiction to fraud" and likely recidivism, *see id.* § 3553(a)(2)(C). Counsel and King cannot identify a compelling reason why his sentence is unreasonable, and thus we agree that it would be frivolous to pursue this challenge. *See, e.g.*, *United States v. Walker*, 447 F.3d 999, 1007-08 (7th Cir. 2006).

Most frivolous criminal appeals are offered by the attorney because the defendant wanted the lawyer to appeal. We have pointed out that no one has the right to file a frivolous appeal and that an attorney has a duty to file an *Anders* brief rather than argue silly grounds for reversals. *United States v. Bullion*, 466 F.3d 574 (7th Cir. 2006). We commend attorney James McKinley for his handling of this appeal. We recognize that tension exists between our directions and the need to faithfully represent one's clients. Here the matter was handled with exactly the proper balance.

The motion to withdraw is GRANTED and the ruling of the District Court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*